# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Mallory Miczulski

**(b)** County of Residence of First Listed Plaintiff Northampton
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Mansour Law, LLC
961 Marcon Blvd., Ste. 425
Allentown, PA 18109 Tel: (610) 321-3538

## DEFENDANTS

Alix, Inc.

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [x] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
42 U.S.C. Sec. 2000e

Brief description of cause:
Pregnancy discrimination

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE DOCKET NUMBER

DATE 02/18/2026

SIGNATURE OF ATTORNEY OF RECORD William P. Mansour

**FOR OFFICE USE ONLY**

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: 569 Pine Top Dr., Bethlehem, PA 18017

***RELATED CASE IF ANY:*** Case Number:______________________ Judge:________________________________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

*A.* ***Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☒ 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:______________________________

**B.** ***Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):________________
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*______________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

[X] Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

[ ] None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| MALLORY MICZULSKI | : | CIVIL ACTION |
| v. | : | |
| ALIX, INC. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (x)

| 02/18/2026 | William P. Mansour | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (610) 321-3538 | (610) 798-1345 | wpm@themansourfirm.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MALLORY MICZULSKI,

Plaintiff,

v.

ALIX, INC,

Defendant.

Civil Action No. ____________________

**COMPLAINT**

NOW COMES, Plaintiff MALLORY MICZULSKI ("Plaintiff"), by and through her undersigned counsel, who hereby complains against Defendant ALIX, INC ("Defendant") as follows:

**INTRODUCTION**

1. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg, *et seq.* ("PWFA"), and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA"). Specifically, as set forth in more detail herein, Defendant violated the above statutes when it discharged Plaintiff because of her pregnancy and because she requested a period of leave following childbirth as a reasonable accommodation.

**PARTIES**

2. Plaintiff is an adult female individual currently residing in Bethlehem, Northampton County, Pennsylvania.

3. Defendant is a Delaware for-profit corporation that provides online legal and administrative estate settlement services. Its principal place of business is located at 59 N. Santa Cruz Ave., Suite Y, Los Gatos, CA 95030.

4. At all times relevant and material hereto, Defendant employed at least fifteen (15) employees during at least twenty (20) work weeks in 2023 and 2024.

**JURISDICTION AND VENUE**

5. This Court has personal jurisdiction over Defendant because Plaintiff's claims arise out of Defendant's purposeful business contacts with Pennsylvania.

6. This Court has jurisdiction over the subject matter of Plaintiff's Title VII and PWFA claims pursuant to 28 U.S.C. § 1331 because those claims arise under the laws of the United States.

7. This Court has jurisdiction over the subject matter of Plaintiff's PHRA claim pursuant to 28 U.S.C. § 1367 because such claim shares a common nucleus of operative fact with Plaintiff's federal law claims.

8. Venue in this district is proper under 28 U.S.C. § 1391(b)(1)-(2) because Defendant regularly conducts business within this district and because the events giving rise to Plaintiff's causes of action arose in this district.

9. On August 14, 2024, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) alleging sex and pregnancy discrimination.

10. On December 8, 2025, Plaintiff received a Notice of Right to Sue from the EEOC, a copy of which is attached hereto as **Exhibit A.**

11. This action is being initiated within ninety (90) days of Plaintiff's receipt of that Notice.

12. Plaintiff has satisfied all other conditions precedent to the filing of this action.

**FACTUAL ALLEGATIONS**

13. On or about August 21, 2023, Defendant hired Plaintiff as a full-time Business Development Director with an annual salary of $140,000.00. Because Defendant was a fairly new company at the time, Plaintiff was its first and only Business Development *employee*. Defendant also had three (3) Business Development *contractors*.

14. Plaintiff worked primarily from her home in Bethlehem, Pennsylvania, with occasional travel to conferences and other marketing events.

15. During her entire period of employment with Defendant, Plaintiff reported to, and was directly supervised by, Defendant's Chief Technology Officer (CTO), Hugh Tamassia, who later also became Defendant's Chief Operations Officer (COO).

16. Plaintiff's first day of work was September 18, 2023. Defendant's co-founder and Chief Executive Officer (CEO), Alexandra Mysoor, and Mr. Tamassia had previously told Plaintiff that the most important part of her job was building strategic partnerships with other businesses related to Defendant's estate settlement services (e.g. funeral homes, estate planning law firms, etc.).

17. During her time with Defendant, Plaintiff largely excelled in her role. By November 5, 2023, Plaintiff had secured business partnerships with two (2) different funeral homes. In November and December 2023, Ms. Mysoor assigned Plaintiff the task of planning and organizing Defendant's company retreat in Austin, Texas. During the retreat, which took place from January 7-11, 2024, Plaintiff and Ms. Mysoor had planned to host a dinner for current and prospective investors to allow them to meet the current management team and to learn more about the company. The night before the dinner, a bad wind storm caused damage to the event location. On

the morning of the event, Plaintiff received an email from the event site explaining that they wouldn't be able to host the dinner because of storm damage. When Plaintiff shared this news with Ms. Mysoor, she was told to "figure it out." For three (3) hours, Plaintiff travelled around Austin, Texas scouting alternative locations. She was finally able to secure a new location and the dinner proceeded as planned. Her colleagues—particularly Ms. Mysoor and Mr. Tamassia—were highly impressed and complimentary of her efforts.

18. Between September 2023 and March 2024, Ms. Mysoor and Mr. Tamassia had nothing but positive feedback for Plaintiff. Their overall positive and complimentary attitude towards Plaintiff began to change, however, on March 20, 2024. During a virtual meeting with Ms. Mysoor and Mr. Tamassia, Plaintiff disclosed to them that she was pregnant. While Ms. Mysoor and Mr. Tamassia did congratulate Plaintiff, she noticed that their tone seemed more to be one of surprise and concern rather than happiness or excitement. Plaintiff then explained to Ms. Mysoor and Mr. Tamassia that she was nervous to tell them about her pregnancy because she wasn't sure how they would react and she didn't want them to think she would be any less committed to her role or the company.

19. Because Defendant was a smaller start-up company, it did not have a Human Resources department or even any formal policies regarding medical or maternity leave. The only policy Defendant had regarding leave was an ***unlimited*** PTO policy, which was set forth in Plaintiff's Employment Agreement. Specifically, her Agreement stated in paragraph 5 that "Alix offers paid time off that allows employees to take as much time as needed, with the expectation that work and performance standards are being met."

20. Because she knew that Defendant lacked any HR department or formal maternity leave policy, Plaintiff broached the subject during her meeting with Ms. Mysoor and Mr. Tamassia

on March 20, 2024. She asked them if they would be open to reviewing the research she had been doing on parental leave, with an eye toward working with them to establish a more formal policy. Mr. Tamassia replied by stating he thought Plaintiff would just "take the time you need." He then asked how much leave Plaintiff received from her previous job after the birth of her first child. When she replied, "18 weeks," both Ms. Mysoor and Mr. Tamassia looked visibly shocked. Plaintiff stated she was not expecting to receive that same amount of time considering that Defendant is a newer, smaller company. Mr. Tamassia then asked Plaintiff how much paternity leave her husband receives, and when she responded with "20 weeks," they again appeared visibly shocked. Plaintiff proceeded to tell them that the average amount of parental leave being offered by Defendant's competitors was 12 weeks, to which Ms. Mysoor responded, "Yeah, but they aren't seed startups!" Caught off guard, Plaintiff responded with uncertainty and stated she would "look into it." Ms. Mysoor also stated that Defendant's "administrator," Julie Nguyen, would "look into" the issue of parental leave as well.

21. Following Plaintiff's March 20, 2024 meeting with Ms. Mysoor and Mr. Tamassia, the issue of parental leave was never discussed with her again. Upon information and belief, Defendant never asked Ms. Nguyen to research the issue of such leave.

22. One (1) week later, on March 27, 2024, Ms. Mysoor asked Plaintiff to provide a detailed list of all active projects she is working on, including who is responsible for the project and the next steps for each one. Plaintiff found this request strange since Ms. Mysoor had never made a similar request over the prior six (6) months of Plaintiff's employment.

23. Seven (7) days later, on April 3, 2024, Ms. Mysoor asked Plaintiff if she would be willing to move her weekly 2:1 meeting with Ms. Mysoor and Mr. Tamassia up one day from April

5, 2024 to April 4th at 3:30 p.m. Plaintiff responded that would be fine, and then proceeded to reschedule a meeting she previously scheduled with her team for that same time.

24. On this same day, Plaintiff learned from Mr. Tamassia that Ami Gosalia, who Defendant hired a few weeks prior, would become her new boss/supervisor. Plaintiff knew for a fact that Defendant was paying Ms. Gosalia a higher salary than her. Upon information and belief, Ms. Gosalia was not pregnant at the time of her hire and did not have any dependent children.

25. The next day, on April 4, 2024, Plaintiff personally learned that Defendant had just discharged two (2) female employees (Kyndell Fry and Kati DiFazio), both of whom had children. Both employees earned substantially less than Plaintiff.

26. Later that same day, during her scheduled 2:1 virtual meeting with Ms. Mysoor and Mr. Tamassia, Plaintiff was discharged just two (2) weeks after informing Ms. Mysoor and Mr. Tamassia that she was pregnant. Mr. Tamassia claimed that Defendant was "letting go" of "high-salaried employees." Plaintiff replied by stating she did not believe that since she knows she is not the highest paid employee (but the only one being fired) and that Defendant just discharged two (2) other employees who earn far less than she does. Mr. Tamassia agreed with Plaintiff, stating: "You're right, you're not the highest paid person here."

27. After getting a little emotional, Plaintiff then asked whether they were firing her because she was pregnant. Mr. Tamassia put his head down and shook it as though he were ashamed, but did not give a verbal response, and neither did Ms. Mysoor. Plaintiff then asked if she could continue her health insurance given that she was pregnant and is she would receive a severance. In response, Mr. Tamassia said "Let's talk about that another time," but assured Plaintiff that Defendant would "help [her] through this."

28. The meeting quickly ended, and Plaintiff never spoke to Mr. Tamassia or Ms. Mysoor again. Moreover, no one from Defendant ever contacted Plaintiff about a severance package, continuing her health coverage, or how Defendant would "help her through" her termination.

29. At the time of her discharge, Plaintiff was one of five (5) Business Development employees along with three (3) Business Development contractors. Two (2) of these employees – Ami Gosalia and Michael Tran – were hired just weeks earlier on March 4, 2024 and March 18, 2024, respectively, and both were paid higher salaries than Plaintiff.

30. Plaintiff was the only Business Development employee or contractor who was pregnant.

31. Plaintiff was the only Business Development employee or contractor who was discharged by Defendant on or around April 4, 2024.

## COUNT I
## DISCRIMINATORY DISCHARGE BASED ON SEX/PREGNANCY IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000e-2

32. Plaintiff incorporates by reference all preceding allegations as if same were set forth more fully at length herein.

33. At the time of her discharge, Plaintiff was pregnant.

34. At the time of her discharge, Defendant knew Plaintiff was pregnant.

35. On April 4, 2024, Defendant discharged Plaintiff.

36. Defendant discharged Plaintiff about two (2) weeks after it learned she was pregnant.

37. Defendant discharged Plaintiff allegedly because it was letting go of high-salaried employees such as Plaintiff.

38. Defendant discharged Plaintiff because of her pregnancy.

39. As a direct and proximate result of her discharge, Plaintiff suffered past and future lost wages and loss of earning capacity.

40. As a direct and proximate result of her discharge, Plaintiff suffered significant emotional distress and mental anguish, inconvenience, and financial insecurity.

41. By discharging Plaintiff under the circumstances alleged herein, Defendant acted intentionally with the purpose of depriving Plaintiff of her rights under Title VII or recklessly and with conscious disregard for Plaintiff's rights under Title VII.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant and award the following relief:

a. All back pay from April 4, 2024 through the date of judgment, plus pre- and post-judgment interest;

b. Front pay from the date of judgment through a date deemed equitable and just by the court;

c. Compensatory damages in an amount to be determined at trial;

d. Punitive damages in an amount to be determined at trial;

e. All costs and reasonable attorney's fees; and

f. Any other relief deemed proper and just.

**COUNT II**
**RETALIATION IN VIOLATION OF THE PWFA, 42 U.S.C. § 2000gg-1(5)**

42. Plaintiff incorporates by reference all preceding allegations as if same were set forth more fully at length herein.

43. Plaintiff's disclosure of her pregnancy and discussion about Defendant's parental leave with Ms. Mysoor and Mr. Tamassia on March 20, 2024 constituted a request for a reasonable

accommodation related to her pregnancy and/or childbirth. Specifically, Plaintiff inquired about Defendant's parental leave policies (or lack thereof) for the express purpose of determining how much parental leave she would be entitled to following the birth of her child.

44. A defined period of parental leave following the birth of a child is customary in Defendant's industry and was a reasonable accommodation for Plaintiff's pregnancy and childbirth.

45. Defendant discharged Plaintiff because she requested, and expected to receive, a defined period of parental leave following the birth of her child.

46. Had Plaintiff not requested a period of parental leave, Defendant would not have discharged her.

47. Defendant discharged Plaintiff for the express purpose of avoiding having to provide her parental leave following the birth or her childbirth, particularly in light of Defendant's unlimited PTO policy.

48. As a direct and proximate result of her discharge, Plaintiff suffered past and future lost wages and loss of earning capacity.

49. As a direct and proximate result of her discharge, Plaintiff suffered significant emotional distress and mental anguish, inconvenience, and financial insecurity.

50. By discharging Plaintiff under the circumstances alleged herein, Defendant acted intentionally with the purpose of depriving Plaintiff of her rights under the PWFA or recklessly and with conscious disregard for Plaintiff's rights under the PWFA.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant and award the following relief:

a. All back pay from April 4, 2024 through the date of judgment, plus pre- and post-judgment interest;

b. Front pay from the date of judgment through a date deemed equitable and just by the court;

c. Compensatory damages in an amount to be determined at trial;

d. Punitive damages in an amount to be determined at trial;

e. All costs and reasonable attorney's fees; and

f. Any other relief deemed proper and just.

**COUNT III**
**DISCRIMINATORY DISCHARGE BASED ON SEX/PREGNANCY IN VIOLATION OF THE PHRA, 43 P.S. § 955(a)**

51. Plaintiff incorporates by reference all preceding allegations as if same were set forth more fully at length herein.

52. For the reasons set forth in paragraph 1-38, above, Defendant violated the PHRC by discharging Plaintiff because of her sex/pregnancy.

53. As a direct and proximate result of her discharge, Plaintiff suffered past and future lost wages and loss of earning capacity.

54. As a direct and proximate result of her discharge, Plaintiff suffered significant emotional distress and mental anguish, inconvenience, and financial insecurity.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant and award the following relief:

a. All back pay from April 4, 2024 through the date of judgment, plus pre- and post-judgment interest;

b. Front pay from the date of judgment through a date deemed equitable and just by the court;

c. Compensatory damages in an amount to be determined at trial;

d. All costs and reasonable attorney's fees; and

e. Any other relief deemed proper and just

**DEMAND FOR JURY TRIAL**

**PLEASE TAKE NOTICE** that Plaintiff MALLORY MICZULSKI hereby demands a trial by jury for all claims and issues so triable.

*Respectfully Submitted*,

**MANSOUR LAW, LLC**

Dated: February 18, 2025

BY: */s/ William P. Mansour*

William P. Mansour, Esquire
Pa. Atty. ID No. 318833
961 Marcon Blvd., Suite 425
Allentown, PA 18109
Tel: (610) 321-3538
Fax: (610) 798-1345
Email: wpm@themansourfirm.com

Attorney for Plaintiff Mallory Miczulski